UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED FARM FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No. 1:22-CV-199-HAB |
| AUTO-OWNERS INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The parties have the Court's thanks. They have, over the course of briefing, distilled what could have been a tricky case of insurance policy interpretation down to a single question: is an antique steam farm tractor a "motor vehicle" or "recreational vehicle" in Defendant's Policy No. 95-929-815-00 ("Auto-Owners Policy")? Because the Court finds that an antique steam farm tractor meets the definition of a "motor vehicle" in the Auto-Owners Policy, Defendant is entitled to summary judgment.

**I.      Factual Background**

**A.     *The Held Lawsuit***

This case is about how coverage should be allocated between the parties for a suit brought by A.H. in the Porter County, Indiana, Superior Court ("Held Lawsuit"). A.H. alleged that she and her parents attended an event hosted by the Northern Indiana Historical Power Association ("NIHPA") in September 2015. The event featured several antique farm tractors. While at the event, A.H. was injured when she stepped in hot ashes that had been discarded from an antique

farm tractor ("Tractor") owned and operated by Dan Warren ("Warren"). This is a picture of the Tractor:



A.H. brought a four-count complaint alleging negligence on the part of NIHPA, Warren, and others. It is assumed, for the sake of this Opinion and Order, that both Plaintiff's and Defendant's policies cover the Held Lawsuit.

**B.**     *Plaintiff's Policy*

Plaintiff insured NIHPA when A.H. was allegedly injury under Policy No. CPP 8122223 11 ("Farm Bureau Policy"). Relevant here, the Farm Bureau Policy contains the following Other Insurance provision.

>    **4.**     **Other Insurance**
>
>    If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

      **a.**    **Primary Insurance**

The insurance is primary except when **b.** below applies.[1] If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all other insurance by the method described in **c.** below.

\* \* \* \*

      **c.**    **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(ECF No. 24-3 at 59).

**C.**    *Defendant's Policy*

Defendant insured Warren at the time of the alleged injury under the Auto-Owners Policy.

Like the Farm Bureau Policy, the Auto-Owners Policy also contains an Other Insurance provision.

      **d.**    **OTHER INSURANCE – PERSONAL LIABILITY COVERAGE**
If there is other valid and collectible liability insurance, we will pay **our** share of the loss. **Our** share will be the ratio of the amount of this insurance to the total amount of all valid and collectible liability insurance. However, any insurance **we** provide for **aircraft, motor vehicles, recreational vehicles** and **watercraft** shall be excess over any other liability insurance except other liability insurance which is specifically written as excess insurance over this policy.

(ECF No. 24-4 at 8). This dispute is over the final sentence.

The parties agree that the Tractor was not an "aircraft" or "watercraft." They disagree on whether it was a "motor vehicle" or "recreational vehicle." The Auto-Owners Policy defines

---

[1] Plaintiff concedes that subsection b. does not apply.

3

"motor vehicle" as "a motorized land vehicle. **Motor vehicle** does not include a **recreational vehicle**." (*Id*. at 26). "Recreational vehicle," in turn, is defined as "a motorized land vehicle designed primarily for recreational purposes but not designed for travel on public roads. **Recreational vehicle** does not include **watercraft**." (*Id*.).

## II.    Legal Analysis

### A.    *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*,

4

337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.**     ***The Broad Definition of "Motor Vehicle" in the Auto-Owners Policy Covers the Tractor***

Because this case is before the Court on diversity jurisdiction, the Court applies Indiana law. Insurance policies are governed by the same rules of construction as other contracts. *Gregg v. Cooper*, 812 N.E.2d 210, 215 (Ind. Ct. App. 2004). As with other contracts, the interpretation of an insurance policy is a question of law. *Vann v. United Farm Fam. Mut. Ins. Co.*, 790 N.E.2d 497, 502 (Ind. Ct. App. 2003).

When interpreting an insurance policy, the Court's goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Gregg*, 812 N.E.2d at 215. The Court construes the insurance policy as a whole and considers all the provisions of the contract, not just the individual words, phrases, or paragraphs. *Id*. If the language is clear and unambiguous, the Court must give the language its plain and ordinary meaning. *Id*.

An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Gregg*, 812 N.E.2d at 215. But an ambiguity does not exist just because the parties proffer differing interpretations of the policy language. *Id*. The Court must accept an interpretation of the contract language that harmonizes the provisions, rather than one that supports conflicting versions of the provisions. *Id*. Additionally, the power to interpret contracts does not extend to changing their terms and the Court will not give insurance policies an unreasonable construction to provide greater coverage. *Id*.

The interpretation of "motor vehicle" and "recreational vehicle," as defined in the Auto-Owners Policy, appears to be a matter of first impression. The parties cite to no case law interpreting this language, and the Court's own research has uncovered none. Nor has any treatise

addressed definitions as broad in scope as those in the Auto-Owners Policy. The Court has only the policy language on which to base its decision.

First, the Court concludes that the Tractor was not a "recreational vehicle." To be a "recreational vehicle" under the Auto-Owners Policy, the Tractor would need to have been "designed primarily for recreational purposes." Whatever the purpose of the Tractor now, it was not "designed primarily for recreational purposes." It was designed to be a farm tractor. It was a working, not recreational, vehicle.

Viewing the Auto-Owners Policy as a whole, the Court concludes that the Tractor was a "motor vehicle." The definition of "motor vehicle" in the Auto-Owners Policy is extremely broad. A "motorized land vehicle" is, without additional qualification, any vehicle that operates on land and has a motor. The Tractor operates on the land and has a motor. The only question, then, is whether it is a vehicle.

The parties provide competing definitions of "vehicle" and "motor vehicle" from various online sources. Defendant focuses on broad definitions that encompass conveyances generally. (ECF No. 26 at 11). Plaintiff focuses on narrow definitions that specifically call out cars, trucks, and buses. (ECF No. 31 at 5-6). The Court agrees that, in the abstract and without further context, both sets of definitions are reasonable.

But the Court finds that the Auto-Owners Policy read as a whole, particularly the way it uses the term "motor vehicle" in other provisions, tips the scale in Defendant's favor. For instance, Section II(1)(a)(1)(a)(2) of the Auto-Owners Policy covers damages arising out of the "ownership, maintenance, use, loading or unloading" of "**motor vehicles** not subject to registration by a state regulatory agency which are used primarily for servicing and maintaining an **insured premises**." (ECF No. 24-4 at 42). This provision shows that "motor vehicles" encompasses far more than

traditional passenger vehicles, and necessarily includes things like riding lawnmowers and lawn tractors.

The Accidental Death Benefit coverage also supports this conclusion. That coverage includes another definition for "private passenger automobile," which means "a passenger or station wagon type **motor vehicle** with four or more wheels," "pickup or van type **motor vehicle** with a gross weight of 15,000 pounds or less which is not used in the business of carrying passengers for hire," or "a motorhome." (*Id*. at 12). If "motor vehicle" was limited to only traditional passenger vehicles as Plaintiff maintains, then this definition would be superfluous. That is not an interpretation the Court can give. *Thomson Inc. v. Ins. Co. of N.A.*, 11 N.E.3d 982, 994 (Ind. Ct. App. 2014) (courts must construe language "so as not to render any words, phrases, or terms ineffective or meaningless").

The insurance industry knows-well how to limit a definition of a motor vehicle. *See, e.g.*, *Progressive Se. Ins. Co. v. Chastain*, 153 N.E.3d 330, 339 (Ind. Ct. App. 2020) (interpreting policy defining "motor vehicle" as a "land motor vehicle designed for use principally on public roads"); *Illinois Farmers Ins. Co. v. Wiegand*, 808 N.E.2d 180, 183 (Ind. Ct. App. 2004) (interpreting policy defining "motor vehicle" as "a motorized land vehicle, including a trailer, semi-trailer or motorized bicycle, designed for travel on public roads"). Defendant chose not to limit the definition of "motor vehicle" in the Auto-Owners Policy. The Court must give effect to that choice.

Because the Court concludes that the Tractor was a "motor vehicle" under the Auto-Owners Policy, it must find that the Auto-Owners Policy is excess to the Farm Bureau Policy. The Auto-Owners Policy expressly states that, where it provides coverage for a "motor vehicle," that coverage is excess. The Farm Bureau Policy, on the other hand, is expressly primary coverage. Harmonizing these provisions, as the Court must, the Auto-Owners Policy provides excess

7

coverage only for the Held Lawsuit. *Cincinnati Ins. Co. v. Am. Alt. Ins. Co.*, 866 N.E.2d 326, 329 (Ind. Ct. App. 2007).

**III.     Conclusion**

For these reasons, Plaintiff's motion for summary judgment (ECF No. 22) is DENIED. Defendant's motion for summary judgment (ECF No. 25) is GRANTED. The Clerk is DIRECTED to enter judgment for Defendant and against Plaintiff.

SO ORDERED on November 3, 2023.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT